# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2013

Lyle W. Cayce
Clerk

No. 13-60322
Summary Calendar

DFSYSTEMS, INCORPORATED,

> Petitioner - Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

> Respondent - Appellee

Appeal from a Decision
of the United States Tax Court
Case No. 17261-11

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Petitioner DF Systems appeals the decision of the United States Tax Court that it had a deficiency in federal income tax for the taxable year 2006. We AFFIRM.

DF Systems is an electrical contracting company owned and operated by Larry Dorman and his wife, Gladys Dorman. In 2000, DF Systems received a letter from one of its customers, requesting work to be performed by minority

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

contractors. Lorie Dorman Schroder, the Dorman's daughter, formed E.L. Construction, Inc., in order to meet this request. DF Systems then convened a special board meeting and voted "to advance money to E.L. Construction, Inc. for the [purpose] of getting this corporation started and pursue minority work." The minutes of this meeting do not establish the amount of money that DF Systems intended to advance to E.L. Construction, an interest rate for the money advanced, a repayment schedule, or any security taken. DF Systems did not enter into a written loan agreement with E.L. Construction, the purported borrower, and did not take an equity interest in the company.

Unrelated to this transaction, in 2005 DF Systems wrote 19 checks to Jose Padilla, a long-time employee of the company who was forced to stop working due to a terminal illness, and three other checks to Reuben Padilla, Jose Padilla's son. DF Systems recognized these payments at a special board meeting but did not indicate that the checks were intended to be a loan. There was no written agreement, and the records do not establish a definite amount to be advanced, terms of repayment, interest rate, or collateral provided as a security interest.

On its 2006 federal income tax return, DF Systems claimed a bad-debt deduction of $56,656 related to its payments to E.L. Construction and $25,320 related to its payments to the Padillas. After an audit, the Commissioner disallowed the deductions, concluding that DF Systems failed to establish "that these amounts were bad debts arising from true debtor-creditor relationships, based upon valid and legally enforceable obligations, that these amounts became worthless during the taxable year, or that you took all reasonable steps to collect the debts." Based on a disallowance of these deductions, the Commissioner found a tax deficiency in the amount of $30,728.

DF Systems sought redetermination of the deficiency in the United States Tax Court. Following a trial, the tax court issued its decision. The tax

No. 13-60322

court agreed with the Commissioner that neither of the monetary transfers were bona fide loans because no objective factors indicated that DF Systems had entered into a genuine debtor-creditor relationship with either alleged borrower. In reaching this conclusion, the tax court found Gladys Dorman's and Lorie Dorman Schroder's testimony to the contrary "unconvincing." The tax court held that DF Systems had an income tax deficiency for the year 2006 in the amount of $30,728.

## DISCUSSION

We review the tax court's findings of fact for clear error and conclusions of law *de novo*. *Green v. Commissioner*, 507 F.3d 857, 866 (5th Cir. 2007). "[W]hether payments or disbursements by a taxpayer are to be treated as debts for tax purposes is an issue of fact." *Piggy Bank Stations, Inc. v. Commissioner*, 755 F.2d 450, 452 (5th Cir. 1985); *see also Saunders v. Commissioner*, 720 F.2d 871, 873 (5th Cir. 1983) ("Whether a certain transaction creates a creditor-debtor relationship is a question of fact . . . .").[1]

A taxpayer may claim a bad-debt deduction under Section 166 of the Internal Revenue Code only for a bona fide debt. "A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Treas.

---

[1] The Commissioner suggests that our precedents are unclear as to whether review of the debtor-creditor relationship is a question of law or fact, though DF Systems appears to accede to clear-error review. S*ee e.g.*, *Estate of Mixon v. United States*, 464 F.2d 394, 402 (5th Cir. 1972) (stating that the evaluation of whether a monetary advance is debt or equity is a question of law subject to *de novo* review); *Texas Farm Bureau v. United States*, 725 F.2d 307, 312 (5th Cir. 1984) (stating that the debt-capital contribution determination is a question of law except when the court is evaluating the debtor's subjective intent). We explained in *Saunders* why the clear-error standard is the correct one here. *Saunders*, 720 F.2d at 873 n.3. Review here is for clear error because DF Systems relies on the subjective intent of the parties to establish the existence of a bona fide debt. This is a question of "pure fact." *Texas Farm Bureau*, 725 F.2d at 312.

Reg. § 1.166-1(c).  In order to determine the existence of bona fide debt, we have considered the following non-exclusive factors:

> (1) the names given to the certificates evidencing the indebtedness; (2) [t]he presence or absence of a fixed maturity date; (3) [t]he source of payments; (4) [t]he right to enforce payment of principal and interest; (5) participation in management flowing as a result; (6) the status of the contribution in relation to regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) source of interest payments; (11) the ability of the corporation to obtain loans from outside lending institutions; (12) the extent to which the advance was used to acquire capital assets; and (13) the failure of the debtor to repay on the due date or to seek a postponement.

*Estate of Mixon*, 464 F.2d at 402.

DF Systems attempts to distinguish its situation from other cases applying the *Mixon* factors.  It argues that the tax court's reliance on precedent "addressing shareholder loans to corporations and loans between interrelated corporations" caused that court to focus too narrowly on the form of the transaction and disregard the evidence of the parties' intent.  *See Piggy Bank Stations, Inc.*, 755 F.2d at 452; *Texas Farm Bureau*, 725 F.2d at 311.  We agree that some of the factors may not apply to the arrangement with E.L. Construction because its terms were so incomplete.  In addition, although DF Systems cites an unpublished decision applying the Ninth Circuit's shorter, slightly differently-worded list of factors, that list is almost identical in substance to our own and is arguably a good fit here only because it condenses the *Mixon* factors in a way that better meets the present circumstance.  *See Todd v. Commissioner*, 486 F. App'x 423, 426 (5th Cir. 2013).

Regardless of which list we use to evaluate the circumstances surrounding the transactions between DF Systems and E.L. Construction, nothing about the subsequent dealings between those companies indicates that

No. 13-60322

there was a debtor-creditor relationship.  We agree with DF Systems that the absence of a formal loan agreement is not determinative, but the absence of a formal loan agreement is certainly relevant.  *See United States v. Williams*, 395 F.2d 508, 510-11 (5th Cir. 1968).  More powerful in our analysis is the purported loan's lack of real substance.  *Id.*  There was no initial fixed or determinable sum to be repaid, specified interest rate, repayment schedule, maturity date, or collateral taken as a security interest.  The absence of these objective economic indicia of genuine debt greatly weakens the argument that a debtor-creditor relationship was intended.  *See Alterman Foods, Inc. v. United States*, 505 F.2d 873, 879 (5th Cir. 1974).

As for DF Systems' evidence, a notation in the minutes of the special board meeting that "money" would be "advanced" to E.L. Construction does not establish the existence of bona fide debt.  Moreover, the numerous debits and credits made under an E.L. Construction account in DF Systems' accounting records, which vary widely over time and amount, do not prove that E.L. Construction was making repayments on a loan.  For instance, the recurring payments made to Chase Automotive Finances and non-corresponding credits from numerous companies, under the heading "job," suggest that DF Systems was paying E.L. Construction's expenses and collecting its revenues.  In any event, these records are "little more than additional declarations of intent" and do little to substantiate DF Systems' argument that it had a debtor-creditor relationship with E.L. Construction.  *Id.*  Finally, the tax court did not err in finding Gladys Dorman's and Lorie Dorman Schroder's testimony regarding the companies' intent unconvincing based in part upon cross-examination that revealed Schroder misunderstood the meaning of "solvent" and that E.L. Construction had very few assets.  *See MacGuire v. Commissioner*, 450 F.2d 1239, 1244 (5th Cir. 1971).

No. 13-60322

Similarly, DF Systems offers no objective evidence to support its argument that it loaned the $25,320 to the Padillas.  Instead, it again relies on the minutes of a special board meeting, a number of accounting entries in its journal, and the alleged uncontradicted testimony at trial.  This evidence is subject to the same criticism as the evidence related to its dealings with E.L. Construction: it is subjective and there are no reliable indicia of genuine debt.  *Alterman Foods*, 505 F.2d at 879.  Here, as with E.L. Construction, there was no initial fixed sum of money to be repaid, repayment schedule, interest rate, or collateral.  Although Dorman's trial testimony that Padilla intended to repay the debt was uncontradicted in the sense that the Commissioner offered no witnesses to rebut it, the trial court did not err by finding it unconvincing in light of the other objective evidence.  *MacGuire*, 450 F.2d at 1244-45.

In evaluating whether a debt is bona fide, we "look not to mere labels or to the self-serving declarations of the parties, but to the more reliable criteria of the circumstances surrounding the transaction."  *Tyler v. Tomlinson*, 414 F.2d 844, 850 (5th Cir. 1969).  The tax court did not clearly err in upholding the Commissioner's determination that DF Systems had a tax deficiency in the amount of $30,728 for the year 2006.  We AFFIRM.