The C.M. THIBODAUX CO., LTD., Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 89–3717.

United States Court of Appeals, Fifth Circuit.

Oct. 26, 1990.

David Bruce Spizer, New Orleans, La., for plaintiff-appellant.

Steven Gremminger, Trial Atty., Tax Div., U.S. Dept. of Justice, Ernest J. Brown, Laura Marie Conley O'Hanlon, Ann B. Durney, and Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GEE, RUBIN and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The C.M. Thibodaux, Co., Ltd. (Thibodaux) appeals a summary judgment denying it recovery of federal income taxes and interest paid under protest. Thibodaux had transferred to its shareholders the right to receive bonuses and delay rentals from mineral leases on corporate property. The district court held that this transfer was an anticipatory assignment of Thibodaux's income and therefore the income from the bonuses and delay rentals was taxable to it. We find no error and affirm.

## I.

Thibodaux is a corporation formed to purchase, hold, manage, and sell real estate and other property for its shareholders. In 1976 Thibodaux declared a dividend in kind to its shareholders of all outstanding and future mineral royalties on corporate-owned property. In 1981 Thibodaux amended the Royalty Deed [1] to grant to its

---

1. The amendment to the Royalty Deed reads in pertinent part:

WHEREAS, on the 13th day of June, 1981, at a meeting of the Board of Directors of C.M. THIBODAUX COMPANY, LTD., said Board granted to the stockholders of record on June 1, 1981 the right to receive 100% of the whole of any and all bonus and delay rentals, provided for in any oil, gas and mineral lease upon the lands described in the aforementioned mineral royalty dividend. Any such oil, gas and mineral lease on said property shall provide for the payment to the grantees directly of their proportionate part of said 100% of all bonus, delay rentals and other considerations received on account of said lease.

HOWEVER, grantor herein, namely, C.M. THIBODAUX COMPANY, LTD., reserves the executive rights, that is, the right to negotiate,

shareholders the right to receive all bonuses and delay rentals [2] as well as royalties.[3] Thibodaux expressly retained the right to negotiate and enter into future mineral leases "without reference to or consultation with grantees."

Pursuant to the amended Royalty Deed, Thibodaux's mineral lessees paid all royalties, bonuses, and delay rentals directly to Thibodaux shareholders. The shareholders included these payments in their gross income and have paid federal income tax on this income. To avoid back taxes and interest if the IRS determined that the bonus and delay rental payments should have also been included in its corporate income, Thibodaux included those payments in its income and paid taxes on them under protest.

After the IRS denied Thibodaux's claims for refund for the years in question, Thibodaux sued the United States in district court to recover the money it allegedly overpaid. Thibodaux argued that the transfer of the right to bonuses and delay rentals was a transfer of income-producing property under Louisiana law and therefore not taxable to it. The IRS contended that the transfer was an anticipatory assignment of Thibodaux's income for which it should be taxed. The district court granted the United States' motion for summary judgment holding the income taxable to Thibodaux, 723 F.Supp. 367, and Thibodaux lodged this appeal.

## II.

### A.

■ A fundamental tenet of federal income taxation is that income is taxable to the one who earns it. *United States v. Basye*, 410 U.S. 441, 449, 93 S.Ct. 1080, 1085, 35 L.Ed.2d 412 (1973); *Commissioner v. Culbertson*, 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–13, 93 L.Ed. 1659 (1949);

see also I.R.C. § 61(a)(5) (taxable "gross income means all income from whatever source derived, including ... rents"). An essential corollary of this principle is that "one who earns income cannot escape tax upon the income by assigning it to another." *Caruth Corp. v. United States*, 865 F.2d 644, 648 (5th Cir.1989); see also *Basye*, 410 U.S. at 449, 93 S.Ct. at 1085 ("The entity earning the income ... cannot avoid taxation by entering into a contractual arrangement whereby that income is diverted to some other person or entity."). Thus after a contractual transfer, the question becomes whether the transferor taxpayer "earned" any income such that it may be taxed for it.

The assignment of income doctrine had its genesis in *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930). In *Earl*, the taxpayer husband contracted with his wife that they would share all property, including income from future personal services. *Id.* at 113–14, 50 S.Ct. at 241. Consistent with this contract, the taxpayer reported only half of the salary he earned as an attorney. Although the Supreme Court assumed that the contract's validity was "unquestionable under the law of the state of California, in which the parties lived," it nevertheless held that the taxpayer was taxable on his entire salary and fees. *Id.* at 114, 50 S.Ct. at 241. Justice Holmes observed that taxes on income earned "could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the [income] when paid from vesting even for a second in the [one] who earned it." *Id.* at 115, 50 S.Ct. at 241.

Likewise in *Helvering v. Horst*, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), the Supreme Court held that a taxpayer father who retained ownership of bonds was taxable on bond interest coupons he had given to his son. The Court held that father

make and enter into any future oil, gas and mineral lease or leases affecting the whole of said lands above mentioned, without reference to or consultation with grantees.

**2.** A "bonus" is "money or other property given for the execution of a mineral lease." La.Rev. Stat.Ann. § 31:213(1) (West 1989). A "delay

rental" is "an amount paid for the privilege of deferring development of the property." Treas. Reg. § 1.612–3(c)(1) (1989). Moreover, "a delay rental is in the nature of rent." Id. § 1.612–3(c)(2).

**3.** The IRS does not seek to tax Thibodaux on the royalty payments the shareholders received.

could not avoid paying tax on the interest on his bonds by assigning his right to receive the interest income to his son. The *Horst* Court cited the metaphor coined by Justice Holmes in *Lucas v. Earl* that "the fruit is not to be attributed to a different tree from that on which it grew." *Id.* at 120, 61 S.Ct. at 149 (citing *Earl,* 281 U.S. at 115, 50 S.Ct. at 241).

In a similar case to the one at bar, the lessee paid rent directly to shareholders of a lessor corporation as required by the contract between the lessor and lessee. The Supreme Court held these payments were taxable to the corporation as income. *United States v. Joliet & C.R.R.,* 315 U.S. 44, 46, 62 S.Ct. 442, 444, 86 L.Ed. 658 (1942). The Court said, "Payments made directly to shareholders by the lessee or transferee of corporate property are properly recognized as income to the corporation by reason of the relationship of a corporation to its shareholders." Id. at 48, 62 S.Ct. at 444.

Unlike the *Earl–Horst– Joliet* line of cases in *Blair v. Commissioner,* 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937), the Supreme Court held that the taxpayer had not anticipatorily assigned income. In *Blair,* the taxpayer father had assigned his beneficial interest in a trust to his children.[4] In holding that the father was no longer taxable on the trust income assigned to his children, the Court specifically noted that "[t]here is here no question ... of the taxpayer's retention of control [in producing the income in question]." Id. at 12, 57 S.Ct. at 333.

The importance of control over the income flow arose again in *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). In *Sunnen,* the taxpayer assigned to his wife his interest in licensing contracts between himself and a corporation in which he was the controlling shareholder. The Court noted that the "crucial question [is] whether the assignor retains

sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes." Id. at 604, 68 S.Ct. at 722. The Court held that the income from the contracts was taxable to the husband. It stressed that the husband "retained ... power to control the payment of royalties to his wife" through his ability to end his agreements with the corporation, limit production of the patented device, or license other firms to exploit his patents. Id. at 608–09, 68 S.Ct. at 724–25.

### B.

■ Applying *Sunnen* to the instant case, Thibodaux obviously retained significant control over the income flow. It owned the property on which the mineral leases would be entered. It had the exclusive right to "negotiate, make and enter into" these mineral leases "without reference to or consultation with the grantees." Thus, Thibodaux retained absolute control over the production of income from bonuses and delay rentals. It alone could enter into leases or decide the amounts of bonuses and delay rentals it would accept. Moreover, it could deprive the shareholders of any income whatsoever by either not entering into any leases or entering into leases which did not provide for bonuses or delay rentals.

Thibodaux argues that its ability to regulate payments to its shareholders by regulating the leases it grants does not necessarily mean it should be taxed on that income. To support its position, Thibodaux cites our recent decision in *Caruth Corp. v. United States,* 865 F.2d 644 (5th Cir.1989). This reliance is misplaced. In *Caruth,* the taxpayer donated shares of callable non-voting preferred stock in a closely held corporation. Because the taxpayer controlled the voting common stock of the

---

4. The *Horst* Court later distinguished assigning a beneficial interest in a trust such as was at issue in *Blair* from assigning ordinary income or compensation, saying:

> Unlike income thus derived from an obligation to pay interest or compensation, the

income of the trust was regarded as no more the income of the donor than would be the rent from a lease or a crop raised on a farm after the leasehold or the farm had been given away.

311 U.S. at 119, 61 S.Ct. at 148.

corporation, he also controlled whether the corporation redeemed the stock or paid dividends on it. We held that the taxpayer had parted with an income-producing asset and thus was not taxable on the income from the donated stock. *Caruth* is distinguishable from the instant case because in *Caruth* the taxpayer transferred both the right to the income and the underlying asset (the stock) while Thibodaux has transferred only the right to income, but not the underlying asset (the property or the leases).

■ Thibodaux argues, however, that it did transfer income-producing property under Louisiana law. Thibodaux contends that the right to receive bonuses and delay rentals is property under state law and that by transferring that property it can no longer be taxed on it. That state law characterizes a right to receive income as a property right, however, is *not controlling* on the question of which party should pay taxes on the income. As the Supreme Court has explained, the federal tax laws are

> to be interpreted so as to give a uniform application to a nation wide scheme of taxation. State law may control only when the operation of the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law.... The state law creates legal interests but the federal statute determines when and how they shall be taxed.

*Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932) (citations omitted), *quoted with approval in Brown v. United States,* 890 F.2d 1329, 1337 & n. 9 (5th Cir.1989); see also *Galt v. Commissioner,* 19 T.C. 892, 903 (1953), *modified,* 216 F.2d 41 (7th Cir.1954), *cert. denied,* 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955) (holding irrevocable assignment of interest in rent is an anticipatory assignment of income even though state law characterizes such interest as a "chattel real").

■ Thus although the assignment of the right to receive bonuses and delay rentals may be the transfer of a property right under Louisiana law, that does not mean it may not also be an anticipatory assignment of future income under federal income tax law. A recognized property right that is nothing more than the right to receive income may well be taxable to the assignor of such an interest as an assignment of income. For example, in *Horst* cited above, the transferee son possessed property rights in the interest coupons. Nevertheless, the income was taxable to his father because assignment of the right to receive income was not accompanied by the asset that produced the income.

### C.

Thibodaux is the owner of the underlying property and controls the mineral leases. By assigning the right to future rentals and bonuses from mineral leases on that property over which it exercises significant control, it anticipatorily assigned its income. The district court correctly concluded that Thibodaux must pay tax on that income. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.